# NOS. 12-1269 & 12-1788

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| MICHAEL MOORE, et al.,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>LISA M. MADIGAN, et al.,<br><br>*Defendants-Appellees*. | On Appeal from United States District Court for the Central District of Illinois<br><br>No. 11-cv-3134-SEM-BGC<br><br>Honorable Sue E. Myerscough |
| MARY SHEPARD and ILLINOIS STATE RIFLE ASSOCIATION,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>LISA M. MADIGAN, et al.,<br><br>*Defendants-Appellees*. | On Appeal from United States District Court for the Southern District of Illinois<br><br>No. 11-CV-405-WDS-PMF<br><br>Honorable William D. Stiehl |

### *SHEPARD* PLAINTIFFS-APPELLANTS' OPPOSITION TO THE STATE'S PETITION FOR REHEARING *EN BANC*

William N. Howard
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000; (312) 360-6596 Fax

Charles J. Cooper
David H. Thompson
Peter A. Patterson
COOPER AND KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600; (202) 220-9601 Fax

*Attorneys for Plaintiffs-Appellants*
*Mary Shepard and Illinois State Rifle Association*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

I.  THE PANEL DECISION'S HISTORICAL ANALYSIS ACCORDS WITH *HELLER* AND SEVENTH CIRCUIT PRECEDENT AND DOES NOT CONFLICT WITH DECISIONS OF OTHER CIRCUITS. .....................................1

    A.    The Panel Decision Comports with Circuit Doctrine. .................1

    B.    The Panel Decision Does Not Conflict with Decisions from Other Circuits. .............................................................................4

II. THE SCRUTINY APPLIED BY THE PANEL DOES NOT CONFLICT WITH SEVENTH CIRCUIT PRECEDENT OR THE DECISIONS OF OTHER CIRCUITS.................................................................................. 8

    A.    The Panel Decision Comports with Circuit Doctrine. .................8

    B.    The State Bears the Burden of Proof. ...................................... 10

    C.    No Remand for a Trial on Legislative Facts Is Needed........... 11

CONCLUSION....................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases** **Page**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................. 1, 8, 9, 10, 13

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). ............................ 9, 10

*Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*,
    916 F.2d 1174 (7th Cir. 1990) ........................................................... 11, 12

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012).............. 4, 5

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) ..................... 1, 3, 4, 13

*Metzl v. Leininger*, 57 F.3d 618 (7th Cir. 1995).......................................... 12

*Turner Broadcasting Systems, Inc. v. FCC*, 520 U.S. 180 (1997) ............... 10

*United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998) ....................................3

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) .................... 6, 7

*United States v. Masciandaro*, 648 F.Supp.2d 779 (E.D. Va. 2009) ..............7

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc) ............... 3, 9

*United States v. Virginia*, 518 U.S. 515 (1996)............................................ 11

*Wright v. United States*, 302 U.S. 583 (1938) .................................................2

**Other**

Fed. R. Evid. 201(a) ..................................................................................... 11

720 ILCS 5/24-1 .............................................................................................5

720 ILCS 5/24-1.6 ..........................................................................................5

**I.   THE PANEL DECISION'S HISTORICAL ANALYSIS ACCORDS WITH *HELLER* AND SEVENTH CIRCUIT PRECEDENT AND DOES NOT CONFLICT WITH DECISIONS OF OTHER CIRCUITS.**

**A.   The Panel Decision Comports with Circuit Doctrine.**

The State claims that the panel decision broke with Seventh Circuit precedent by refusing to conduct the historical analysis mandated by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *See* State of Illinois's Petition for Rehearing *En Banc* ("State Pet.") at 1, 6-7. While *Moore* deemed "the historical issues as settled by *Heller*," slip op. 18, it certainly did not ignore the State's historical arguments. To the contrary, the Court studied those arguments in detail and distinguished the State's principal historical authorities: Blackstone's *Commentaries*, Coke's *Institutes of the Laws of England*, Gardiner's *The Compleat Constable*, the 14th century Statute of Northampton, and the 17th century decision in *Sir John Knight's Case*. *Id*. at 5-7.

Furthermore, the State simply refuses to accept that most of this ground was already plowed in *Heller* and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), as this Court has recognized. The very first sentence of *McDonald* recognized that the Second Amendment " 'protects the right to keep and bear arms for the purpose of self-defense.' " Slip op. 4 (quoting *McDonald*, 130 S. Ct. at 3026). And "*Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment

'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' Confrontations are not limited to the home." Slip op. 4-5 (quoting *Heller*, 554 U.S. at 592). Reading the right to "bear" arms as limited to the interior of the home would make the term superfluous of the textual guarantee of the right to "keep" arms—in violation of the most fundamental canon of construction. *See Wright v. United States*, 302 U.S. 583, 588 (1938).

As *Heller* emphasized, "the natural meaning of 'bear arms' " is to " 'wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person.' " *Heller*, 554 U.S. at 584. This Court therefore correctly reasoned that "[a] right to bear arms thus implies a right to carry a loaded gun outside the home." Slip op. 5. "And one doesn't have to be a historian to realize that a right to keep and bear arms for personal self-defense in the eighteenth century could not rationally have been limited to the home." Slip op. 5. *See also id.* at 7 (concluding that the "Court in *Heller* inferred from [Blackstone] that eighteenth-century English law recognized a right to possess guns for resistance, self-preservation, self-defense, and protection against both public and private violence"); *id.* ("a distinction between keeping arms for self-defense in the home and carrying them outside the home would, as we said, have been irrational").

To be sure, the panel said that this history is "debatable," but it also acknowledged that the lower courts "are bound by the Supreme Court's historical analysis because it was central to the Court's holding in *Heller*." Slip op. 7. As the panel correctly concluded, "[t]o confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*." Slip op. 8.

This understanding of the Second Amendment follows both from *Heller* itself—which is all that truly matters—and from the Seventh Circuit's prior readings of *Heller*. Sitting *en banc*, this Court explained in *United States v. Skoien* that "keeping operable handguns at home for self-defense" is *but "one" of the "individual rights"* guaranteed by the Second Amendment. 614 F.3d 638, 640 (7th Cir. 2010) (emphasis added). And although the Court cautioned that *Heller* should not be treated as "containing broader holdings than the [Supreme] Court set out to establish," *id.*, it did not endorse erring in the opposite direction, *i.e.*, reading *Heller* too *narrowly*. To the contrary, *Skoien* emphasized that the Supreme Court is "entitle[d] to speak through its opinions as well as through its technical holdings" and that "a court of appeals must respect" the "message[s]" contained in those opinions. *Id.* at 641; *see also United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998) (a statement in an opinion that "explains the Court's rationale … is part of the holding"). *Moore* was thus correct to recognize that "*Heller* … *held* that

3

individual self-defense is 'the *central component*' of the Second Amendment right," *McDonald*, 130 S. Ct. at 3036 (first emphasis added), and to evaluate the parties' historical submissions in light of that holding.

    **B.    The Panel Decision Does Not Conflict with Decisions from Other Circuits.**

Next we are told that the panel decision "broke with contrary holdings by the Second and Fourth Circuits" by holding that under *Heller* the Second Amendment " 'confers a right to bear arms for self-defense' outside the home." State Pet. 5 (quoting slip op. 20). Illinois is mistaken. The supposed conflicts with the Second and Fourth Circuits are illusory.

Illinois contends that the panel decision conflicts with *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012). State Pet. 4, 6. But the *Kachalsky* opinion itself concedes that *Heller*'s "analysis suggests, as Justice Stevens's dissent in *Heller* and Defendants in this case before us acknowledge, that the Amendment must have *some* application in the very different context of the public possession of firearms." 701 F.3d at 89 (emphasis in original). *See also id.* at 89 n.10 ("The plain text of the Second Amendment does not limit the right to bear arms to the home."). In upholding New York's restriction of public-carry permits to individuals who can show proper cause, the Second Circuit emphasized that "New York's proper cause requirement *does not operate as a complete ban* on the possession of handguns in public." *Id.* at 91 (emphasis added). As the panel

4

decision here noted, however, in distinguishing the law upheld in *Kachalsky*, Illinois's law does operate as a complete ban on carrying loaded, operable handguns for self-defense in public. *See* slip op. 18-19. Indeed, the Illinois ban extends to the carrying of firearms of all kinds, *see* 720 ILCS 5/24-1 & 5/24-1.6, while New York licenses the carrying only of handguns, *see Kachalsky*, 701 F.3d at 85 ("Rifles and shotguns are not subject to the licensing provisions of the statute.").

The panel, to be sure, criticized the reasoning underlying *Kachalsky*'s "suggestion that that the Second Amendment should have much greater scope inside the home than outside." Slip op. 18. But "the court in *Kachalsky* used the distinction between self-protection inside and outside the home mainly to suggest that a standard less demanding than 'strict scrutiny' should govern"—a point that simply has no bearing here because, as the panel explained, "our analysis is not based on degrees of scrutiny, but on Illinois's failure to justify the most restrictive gun law of any of the 50 states." *Id.* at 18-19.[1]

The Illinois law struck down by the panel is the perfect bookend to the law struck down in *Heller*: There, the Supreme Court invalidated a flat ban on possessing an operable, loaded handgun in the home for self-defense; here, the

---

[1] The panel also noted that it disagreed with *Kachalsky*'s historical analysis insofar as *Kachalsky* failed to follow *Heller*. Slip op. 18.

Seventh Circuit has invalidated a flat ban on possessing an operable, loaded handgun in public for self-defense. Thus, the panel's decision is easily reconciled with *Kachalsky* by the fact that Illinois has imposed a flat ban on carrying firearms in public for self-defense, whereas New York has not.

Nor does the panel's decision conflict with *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011). State Pet. 4-6. In that case the Fourth Circuit assumed, without deciding, that the Second Amendment applies outside the home, as shown by Illinois's own quotation of *Masciandaro*: " 'There may or may not be a Second Amendment right in some places beyond the home, but we have no idea what those places are.' " State Pet. 4-5 (quoting 638 F.3d at 475). Thus, the Fourth Circuit deemed "it prudent to await direction from the Court itself," and ruled that it "ha[d] no reason to expound on where the *Heller* right may or may not apply outside the home because, as Judge Niemeyer ably explains, intermediate scrutiny of any burden on the alleged right would plainly lead the court to uphold the National Park Service regulation" at issue there. *Masciandaro*, 638 F.3d at 475 (Wilkinson, J., writing for the Court.).

In rejecting the Second Amendment claim, Judge Niemeyer emphasized precisely those features of the challenged Park Service regulation that distinguish it from Illinois's singular total ban on carrying firearms in public for self-defense. First, the regulation at issue in *Masciandaro* applied only within the federally

6

owned properties of the National Park system, 638 F.3d at 460, whereas the law challenged here imposes a flat ban throughout the State of Illinois. Second, the national park in Virginia where Masciandaro was arrested was an "area where large numbers of people, including children, congregate for recreation." *Id.* at 473. This led the district court there to rule that it fell within the Supreme Court's exception for "sensitive places." *United States v. Masciandaro*, 648 F.Supp.2d 779, 790-91 (E.D. Va. 2009); *Masciandaro*, 638 F.3d at 472-73 (noting "sensitive place" argument but finding it unnecessary to resolve issue). In contrast, the law challenged here effectively declares *all places* outside the home "sensitive," forbidding law-abiding citizens the right to carry an operable, loaded handgun *anywhere* in *any* public space in the *entire* State of Illinois. Third, the park regulation under which Masciandaro was charged forbade loaded firearms *only in vehicles*. *Id.* at 473. Once again, the global scope of the Illinois ban at issue here distinguishes this case.[2]

---

[2] We acknowledge that the panel decision here does expressly reject Judge Wilkinson's comment that the "notion that 'self-defense has to take place wherever [a] person happens to be' appears to us to portend all sorts of litigation over schools, airports, parks [and other public spaces].… The whole matter strikes us as a vast *terra incognita* that courts should enter only upon necessity and only then by small degree." *Masciandaro*, 638 F.3d at 475 (first alteration in original) (citation omitted). Judge Posner replied, "Fair enough; but that 'vast *terra* incognita' has been opened to judicial exploration by *Heller* and *McDonald*. There is no turning back by the lower federal courts, though we need not speculate on the limits that Illinois may in the interest of public safety constitutionally impose on the carrying of guns in public; it is enough that the limits it *has* imposed go too far." Slip op.

## II. THE SCRUTINY APPLIED BY THE PANEL DOES NOT CONFLICT WITH SEVENTH CIRCUIT PRECEDENT OR THE DECISIONS OF OTHER CIRCUITS.

### A. The Panel Decision Comports with Circuit Doctrine.

Illinois contends that *en banc* review is warranted because the panel decision erroneously and unfairly applied "a standard approaching strict scrutiny" to the State's proffer that its total ban on guns is justified in the name of public safety. State Pet. 9. But, as Illinois acknowledges, the panel explicitly stated that "our analysis is *not* based on degrees of scrutiny." *Id.* at 9 (quoting slip op. 18-19) (emphasis added). Rather, the Court based its analysis on Illinois's failure to justify "the most restrictive gun law of any of the 50 states." Slip op. 19. In this regard, the panel's decision adheres to the Supreme Court's opinion in *Heller*, where the Court determined that the District of Columbia's wholesale ban on handguns in the home could not be squared with the text and history of the Second Amendment. Indeed, the *Heller* Court: (i) emphasized that "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to "keep" and use for protection of one's home and family,' would fail constitutional muster"; and (ii) noted that D.C.'s law was an extreme outlier—"Few laws in the history of our

---

19. As in *Heller*, the panel here declined to offer a field theory of what the Second Amendment allows and forbids, deeming it sufficient for the day that the total ban imposed by the State, like that imposed in *Heller* by the District of Columbia, went too far, regardless of the standard of judicial scrutiny. *See Heller*, 554 U.S. at 628, 635.

8

Nation have come close to the severe restriction of the District's handgun ban." 554 U.S. at 628-29 (citation omitted).

Illinois complains that the panel required the State to make a "strong showing" with "extensive empirical evidence" to support the challenged law. State Pet. 8. But a "strong showing" is precisely the language that this Court has used to describe the standard of review applied by ten members of this Court in *Skoien*. *See* Slip op. 14; *Skoien*, 614 F.3d at 641; *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011).[3] And there is no anomaly in subjecting extreme, uniquely burdensome legislation to heightened judicial review. Indeed, the Illinois law here, like the ban on firing-ranges enjoined in *Ezell*, is subject to "a more rigorous showing than that applied in *Skoien*" because, unlike Steven Skoien, who had been convicted of domestic violence, Mary Shepard and Michael Moore "*are* the 'law-abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under *Heller*, and their claim comes much closer to implicating the core of the Second Amendment right." *Ezell*, 651 F.3d at 708.[4]

---

[3] Illinois asserts that the standard of review was more forgiving in *Kachalsky* and *Masciandaro*. State Pet. 10-11. But as explained above, neither case remotely approached the wholesale ban at issue here, which, under *Heller*, cannot be sustained under any standard. 554 U.S. at 628-29.

[4] Given the panel's decision invalidating Illinois's ban on carrying operable firearms in public, the State's continued enforcement of the ban effectively "stands as a fixed harm to every [Illinoisan's] Second Amendment right" to bear arms and "violates their Second Amendment rights every day it remains on the books."

9

### B.     **The State Bears the Burden of Proof.**

Illinois implores the Court to grant rehearing *en banc* because, it says, the panel was insufficiently deferential to the statistical data, criminological research, and other social science evidence on which Illinois claims its legislature acted. Illinois urges the Court to afford "substantial deference" to the legislature, in accord with what Illinois asserts is the rule of *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997). State Pet. 11. The fatal flaw of the State's argument is that the *Turner* standard was likewise pressed upon the Supreme Court in *Heller*, and only the *dissent* accepted it as the appropriate guidepost. *See* 554 U.S. at 690-91, 704-05 (Breyer, J., dissenting). Thus, the State inadvertently reveals that what this *en banc* petition is really about is getting a chance to reargue *Heller*. But it is not the place of this Court to second-guess or turn back from *Heller*. Slip op. 19. *See also id.* at 13 ("[T]he empirical literature on the effects of allowing the carriage of guns in public fails to establish a pragmatic defense of the Illinois law. Anyway the Supreme Court made clear in *Heller* that it wasn't going to make the right to bear arms depend on casualty counts." (citation omitted)).

---

*Ezell*, 651 F.3d at 698-99. Yet the panel *sua sponte* stayed the mandate for 180 days to allow the Illinois legislature time to react to the Court's decision. We respectfully submit that the Court's grant of such a stay was not well-founded since "every day" that goes by, individual citizens are with certainty "suffering violations of their Second Amendment rights." *Id.* at 710.

In any event, even assuming *arguendo* that intermediate scrutiny is the appropriate standard, Illinois must nevertheless "demonstrate an 'exceedingly persuasive justification' " for the challenged law, and the fit between means and end must survive "skeptical scrutiny." *United States v. Virginia*, 518 U.S. 515, 531 (1996) (quotation marks omitted). It has not come close to satisfying this burden of proof.

### C. No Remand for a Trial on Legislative Facts Is Needed.

Illinois objects that it is entitled to an evidentiary hearing to try, again, to meet its burden of proof. State Pet. 12-13. The State argues that the distinction drawn by the panel between adjudicative facts and legislative facts is a "novel legal rule [that] upends courts' longstanding approach to constitutional litigation." *Id.* at 2. *See also id.* at 12 (same). The distinction is hardly "novel," having been a fixture of the law for seven decades since it was coined by Professor Kenneth Davis in his seminal article in 1942, and thereafter enshrined in the black-letter law of the Federal Rules of Evidence. *See* FED. R. EVID. 201(a); Advisory Comm. Note to Subdivision (a) of the 1972 Proposed Rule. As the panel explained, "[o]nly adjudicative facts are determined in trials, and only legislative facts are relevant to the constitutionality of the Illinois gun law." Slip op. 20. What Illinois denounces as unprecedented is in fact common. *See, e.g.*, *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990)

11

(declining to remand for trial on an issue because "trials are to determine adjudicative facts rather than legislative facts").

The State quotes *Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir. 1995), for the proposition that legislative facts "may 'be adduced' " through trial testimony. State Pet. 13. The full quotation is informative:

> The constitutionality of statutes is typically determined by reference to general considerations, values, intuitions, and other "legislative facts" … rather than to facts presented through testimony and other formal evidence subject to rules of evidence developed largely for the control of lay juries. Still, when the facts necessary for judgment, however they might be adduced, are missing in a case, the court has to decide who shall bear the onus for having failed to place them before the court.

57 F.3d at 622. Thus, there is no requirement that the legislative facts on which Illinois's defense of its statute rests be submitted via testimony. There is no doubt that the State and its amici "have treated [the panel] to hundreds of pages of argument" about the legislative facts relevant to the decision in this case, slip op. 3, nor that the panel reviewed those facts—including criminology reports, public health research, journal articles, and even meta-studies of the entire corpus of gun-violence scholarship supported by the Centers for Disease Control—in detail before rendering its decision, *see* slip op. 8-14. "Illinois had to provide [the Court] with more than merely a rational basis for believing that its uniquely sweeping ban is justified by an increase in public safety. It has failed to meet this burden." Slip op. 20.

At any rate, as the panel noted, "the Supreme Court made clear in *Heller* that it wasn't going to make the right to bear arms depend on casualty counts." *Id.* at 13; *see also McDonald*, 130 S. Ct. at 3050 (plurality). The justifications that matter for purposes of Second Amendment analysis are historical ones. *See Heller*, 554 U.S. at 635 ("[T]here will be time enough to expound upon the historical justifications for the exceptions we have mentioned …."). And under the Supreme Court's historical analysis, the Second Amendment "confers a right to bear arms for self-defense, which is as important outside the home as inside." Slip op. 20. "There is no turning back" on this point, slip op. 19, and this Court is not free to accept Illinois's invitation "to repudiate the [Supreme] Court's historical analysis," *id.* at 4.

## CONCLUSION

The State's petition for rehearing *en banc* should be denied.

Dated: January 23, 2013          Respectfully submitted,

| | |
|---|---|
| William N. Howard | s/ Charles J. Cooper |
| FREEBORN & PETERS LLP | Charles J. Cooper |
| 311 South Wacker Drive, Suite 3000 | David H. Thompson |
| Chicago, IL 60606 | Peter A. Patterson |
| (312) 360-6000; (312) 360-6596 Fax | COOPER AND KIRK, PLLC |
| | 1523 New Hampshire Ave., N.W. |
| | Washington, D.C. 20036 |
| | (202) 220-9600; (202) 220-9601 Fax |

*Attorneys for Plaintiffs-Appellants*
*Mary Shepard and Illinois State Rifle Association*

# CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Charles J. Cooper
Charles J. Cooper
*Attorney for Plaintiffs-Appellants*
*Mary Shepard and Illinois State Rifle Association*
